UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MALKA LASRY,<br><br>            *Plaintiff*,<br><br>v.<br><br>JP MORGAN CHASE & CO.,<br><br>            *Defendant*. | Civil Action No.:<br>3:18-cv-09776-PGS-DEA<br><br>**MEMORANDUM AND ORDER** |

**SHERIDAN, U.S.D.J.**

This matter concerns a Telephone Consumer Protection Act (TCPA) dispute between Plaintiff Malka Lasry ("Plaintiff" or "Lasry") and Defendant JP Morgan Chase & Co.[1] ("Chase Bank"). Chase Bank's chief allegation in this case is that Plaintiff's attorneys failed to undertake any minimal pre-suit investigation to determine the plausibility of Plaintiff's claims against Chase Bank, and by failing to do so, sanctions in the amount of Chase Bank's legal fees and costs should be imposed against Plaintiff's attorneys. The attorneys' fees and costs are $473,445.88.

I.

On October 17, 2019, Plaintiff's motion to voluntarily dismiss with prejudice this action was granted. (ECF No. 29). Although Chase Bank agreed to the voluntary dismissal, it also sought sanctions (payment of attorneys' fees and costs) against Plaintiff's attorneys. Over the course of this litigation, however, Chase Bank has changed its position concerning against whom it seeks sanctions. In its initial application for sanctions and attorneys' fees and costs, Chase Bank

---

[1] Defendant, Chase Bank USA, N.A., was incorrectly named in the Complaint as JP Morgan Chase & Co.

1

indicated that it was seeking sanctions against M. Harvey Rephen and the Rephen Firm[2] only. (Def.'s Br. in Resp. to Pl.'s Mot. for Voluntary Dismissal with Prejudice, ECF No. 21). Chase Bank did not state that it was seeking sanctions against Plaintiff's counsel of record, Edward B. Geller (Geller). Indeed, at the initial hearing regarding Plaintiff's voluntary dismissal motion, Chase Bank's counsel indicated that its sanctions request was "as to Mr. Rephen" (Voluntary Dismissal Hearing, T. 3, 23-25, ECF No. 40), and not Geller[3].

On November 5, 2019, the Court conducted a hearing regarding the imposition of Defendant's legal fees and costs against Plaintiff's attorneys as sanctions (Sanctions Hearing). In its post-trial brief, Chase Bank indicated, for the first time, that it was seeking sanctions against "the Rephen Firm, Marcus Harvey Rephen, *and Edward B. Geller, Esq.*" (Def.'s Response to Pl.'s Post-Trial Br., p. 15, ECF No. 37) (emphasis added). As further explained below, although the Court understands Chase's change of position to supplement its claim at the Sanctions Hearing, the Court has authority over Geller only, and therefore construes Chase Bank's claims as against Geller only.

II.

Under the TCPA, 47 U.S.C. § 227, a company is barred from autodialing a cell phone unless the consumer consents in writing. In the Complaint, Lasry alleges that auto-dialed calls were placed by Chase Bank to two of her cell phones without her consent.

---

[2] For example, one of Chase Bank's argument headings is "The Court Should Sanction *Rephen* Because *He* Filed This Matter in Bad Faith and for the Purposes of Harassment and Extracting Settlement" (Def.'s Response Br., p. 24) (emphasis added); another heading is "*Rephen Should Not Be Rewarded for Misconduct*" (*Id.* at p. 31) (emphasis in original).

[3] When the Court asked against whom Chase Bank was seeking sanctions, Christina G. Sarchio, Chase Bank's counsel of record, stated, "I'm not suggesting Mr. Geller, I'm suggesting the principal of the Rephen Law Firm, which is M. Harvey Rephen . . . ." (T. 8, 4-6).

Lasry retained the Rephen Firm to sue chase Bank for violations of the TCPA. The Rephen Firm is a New York-based law firm. Edward B. Geller, Esq., P.C., is also a New York law firm (*see* Compl, Introduction/Preliminary Statement, ECF No. 1), but Geller is an attorney admitted to practice law in New Jersey. Lasry's Complaint was filed by Geller, who acts in an "Of Counsel" capacity to the Rephen Firm. Curiously, Mark Harvey Rephen, the principal of the Rephen Firm, has not appeared in this case, and no pro hac vice application was filed on Rephen's behalf. Presently, Rephen is residing in Israel indefinitely.

The Complaint alleges that on or about August 2016, Chase Bank began communicating with Lasry by placing auto-dialed phone calls to her cell phone numbers. The Complaint alleges that the phone numbers were 848-210-5283 and 848-240-5258. (Compl. ¶ 8, ECF No. 1). During discovery, it was revealed that the cell number with the exchange of 210 was a mistake, and the correct number is 848-240-5283. (*See* Deposition of Malka Lasry 29:2-10, Jan. 10, 2019, Ex. 1 to Def.'s Br. in Response to Pl.'s Mot. for Voluntary Dismissal with Prejudice, ECF No. 21-2). On or about August 17, 2016, Lasry called Chase Bank and informed the representative that she had been receiving phone calls on her cell phones from Chase Bank. (Compl. ¶ 9). The representative then asked if Chase Bank was leaving her messages, to which Lasry replied she was unsure because she does not check her messages. (*Id.* at ¶¶ 10-11). The representative then asked Plaintiff if she had a Chase Bank account, to which Plaintiff stated that she did not, but her husband, Yehuda Rosenberg ("Rosenberg"), does. (*Id.* at ¶¶ 12-13). Although Rosenberg's credit cards are a subject of this suit, Rosenberg is not a party.

The Chase Bank representative asked Lasry if her husband could call Chase Bank back at his earliest convenience. (*Id.* at ¶ 14). Lasry asked why, and the representative purportedly stated that it was "an important business matter." (*Id.* at ¶¶ 15-16). Lasry agreed, but requested that she

not receive any auto-dialed calls or text messages to her cell phone numbers, to which the representative agreed. (*Id.* at ¶¶ 16-18). As the call concluded, Lasry informed the representative that if a person, not an auto dialer, calls in the future, she will give the phone to her husband. (*Id.* at ¶ 19). Since the August 17, 2016 call with Chase Bank, Lasry claims that she has received at least thirteen auto-dialed calls to both of her cell phone numbers, and that Chase Bank proceeded with its auto-dialed calls, thereby willfully violating the TCPA. (*Id.* at ¶ 20).

On or about June 14, 2019, after most of the discovery was complete (about one year after the Complaint was filed), Lasry filed a motion to voluntarily dismiss her complaint against Chase Bank because Lasry was in the process of relocating to Israel. (Pl.'s Mot. to Dismiss, ECF No. 19; *see* Supplemental Decl. of Malka Lasry ¶ 3, ECF No. 27). In response to the motion, Chase Bank agreed to the voluntary dismissal with prejudice; but now seeks sanctions (payment of attorneys' fees and costs) against Plaintiff's attorneys. As noted above, Chase Bank seeks sanctions in the amount of $462,330 in legal fees and $11,115.88 in costs against the Rephen Firm and Geller. (T. 3, 24 – T. 4, 5; T. 35, 12-19).

III.

Chase Bank brought two witnesses to the Sanctions Hearing: Scott Simon, Vice President and Business Operations Manager of Chase Bank, to explain the facts, and Christina G. Sarchio, Esq., a partner at Dechert, LLP, and counsel of record for Chase Bank, to review the alleged reasonableness of the fees.

Simon testified on Chase's behalf. He investigated the Rosenberg account during the lawsuit. Simon noted that the Complaint alleges (¶ 8) that Chase Bank called Lasry on two telephone numbers (848-210-5283 and 848-240-5258). Simon testified that there were no calls made to 848-210-5283, but some calls were made to 848-240-5258. As indicated above, the cell

number with the 210 exchange was a typographical error in the Complaint and should have been typed with the exchange of 240. At the present time, the Court has no facts concerning the number 848-240-5283.

According to Simon's review of the file, Yehuda Rosenberg, Lasry's husband, had three Chase credit card accounts: a Chase Freedom Card; a Chase Amazon Card; and a Chase Slate Card. (T. 10, 3-7). On July 19, 2016, Rosenberg called Chase Customer Services and he authorized Chase to call the aforementioned telephone numbers, even though the cell numbers were in Lasry's name. (T. 9, 14-18). Simon pointed out that the card member agreement (Def.'s Exhibit 2) permits Chase to call telephone numbers provided by the customer and may "be used [to call] the customer for servicing the customer for various business practices." (T. 11, 1-4). Simon produced the card member agreement for Rosenberg's Chase Freedom Card. (T. 12, 6-17). Within that agreement, Chase Bank reserves the right to contact the customer "through automated call methods and/or texting and/or automated messages." (Def.'s Exhibit 2). The card member agreement allows Chase to call a customer's mobile or cell numbers. The provision reads:

> This may include calls or text messages to mobile, cellular, or similar devices, and calls or text messages using automatic telephone dialing systems and/or prerecorded messages. We may also send an email to any address where we reasonably believe we can contact you.

(Def.'s Exhibit 2). Under Chase Bank's policies, the ability to change an account holder's contact information is limited. (T. 16, 9-16). That is, any change in contact information can be authorized only by the primary customer, a joint customer, or an authorized user. (T. 16, 15-16). In this case, Rosenberg called Chase Bank on July 19, 2016, and provided the above-mentioned telephone numbers; and on August 2 and August 5, 2016, he gave "TCPA Consent" on Chase's website,

which, according to Simon, enables Chase Bank to call through automated calling methods. (T. 16-18, - T. 25).

Immediately after providing the consent, all three of Rosenberg's accounts entered default status for failure to pay the balance due. (T. 18, 14-19). As a result, on August 17 and 18, 2016, Chase initiated collections calls to 848-240-5258, operated by Lasry, by automated dialing methods four times. (T. 19, 2-14). Thereafter, Chase called Rosenberg's phone manually. (T. 19, 15-25). Simon avers that those four calls were authorized by Rosenberg's TCPA consent; and Lasry revoked the TCPA consent of Rosenberg during her cell phone call on August 18, 2016. (T. 20, 10-14). Lasry's call with a Chase Bank representative was recorded and is transcribed below:

> MS. VENZOR: Thank you for calling Chase. My name is Ester, ID number V242376. May I please have your full name as it appears on your account?
>
> MS. ROSENBERG [Mrs. Lasry]: My full name is Malka Rosenberg. I've been receiving phone calls from you guys to the number 848-246-5258 and 848-240-5283.
>
> ***
>
> MS. VENZOR: Sony. 5258. Let's see here. Okay. And do you currently hold an account with Chase, a credit card account?
>
> MS. ROSENBERG [Mrs. Lasry]: No. No. My husband does, though.
>
> MS. VENZOR: Okay. And let's take a look here. And what is your husband's name?
>
> MS. ROSENBERG [Mrs. Lasry]: Yehuda Rosenberg.
>
> MS. VENZOR: Okay. Okay, here. Give me just one second. Okay. So Ms. Rosenberg, I do appreciate you giving us a call today. I'm trying to find out what's going on here. If Mr. Rosenberg could give us a call back at his earliest convenience, I'd be more than --
>
> MS. ROSENBERG [Mrs. Lasry]: What is this ...
>
> MS. VENZOR: I'm sorry?

6

> MS. ROSENBERG [Mrs. Lasry]: What is this about?
>
> MS. VENZOR: Well, currently, it's regarding an important business matter, and so I would need Mr. Rosenberg to give us a call back.
>
> MS. ROSENBERG [Mrs. Lasry]: Okay. So I just want to -- can I just make a request to you not to call me on any one of those numbers with an auto dialer or text?
>
> MS. VENZOR: Okay. Absolutely. So you do not want any phone calls dialing to you or any texts at 848-240-5258?
>
> MS. ROSENBERG [Mrs. Lasry]: Just the auto dialers. If you have a person that can -- that calls, I will put you through if my husband's around, but not an auto dialer and text either.
>
> MS. VENZOR: Okay.
>
> MS. ROSENBERG [Mrs. Lasry]: I have two numbers. So there's 848-240-5258. And there's the other, the 848-12 240-5283.
>
> MS. VENZOR: Okay. I'll get this taken care of for you. Thank you.
>
> MS. ROSENBERG [Mrs. Lasry]: Okay. Thank you.
>
> MS. VENZOR: Mm-hmm.

(Def.'s Exhibit 8, p. 3 of 5; *see* ECF 21-31).

According to Simon, Lasry was not an authorized user on Rosenberg's accounts (T. 22, 12-25), and as such, Lasry could not change the client contact information provided by Rosenberg under Chase Bank's polices even though it appears that Chase complied with Lasry's request. (T. 22, 24 – T. 23, 5-8).

In addition to Simon's testimony, Chase Bank presented the deposition testimony of both Lasry and Yehuda Rosenberg, which demonstrate a lack of factual basis for the lawsuit. Yehuda Rosenberg testified at a deposition and had little recollection of the lawsuit. For example, when questioned about whether he knew Geller or the details of the lawsuit, Rosenberg responded:

> Q. Did you know who he [Geller] was in August of 2017?
>
> A. No. It could be one -- he works for one of these? I remember I spoke, like, two years ago, maybe a year ago, to one -- someone, some sort of lawyer that was working on her behalf.
>
> Q. Okay.
>
> A. So I told you what I said before. I told him that has nothing to do with -- it's not really -- I'm not suing anything for myself. Because it wasn't my phones and it wasn't -- I didn't really -- I wasn't bothered by these calls, really. Most of that, she was the one that was suing here, not me. Why he sue -- why he put my name without -- I'm not sure. I don't know. That's something that he can answer to. I am not sure.
>
> Q. When he called you, what did he -- was he -- what was he doing?
>
> A. Because he may -- ah, I see. It might be -- now I'm connecting the dots. Because it might be that he thinks I because I'm married to her, that's sort of like one thing. But really it's not, because I'm not I'm not really having anything to do with this lawsuit. It's not -- she is the one suing, not me. So maybe this misinformation or miscommunication, maybe that's why he actually put my name. But I don't know. I'm just trying to understand why.

(Deposition of Rosenberg 129:04 to 130:6, Def.'s Exhibit 23).

As vague as the above answer sounds, Lasry was also deposed, and she recalls little about the facts of the case; and she debunks the factual basis of the lawsuit. For instance, Lasry cannot recall whether Chase autodialed her cell phone. She stated at her deposition:

> Q. Ms. Lasry, as you sit here today then, you don't have any evidence yourself that Chase was using an auto dialer to place these calls to either the 848-240-5283 or 848-240-5258 numbers; right?
>
> A. Correct. The way they were made just makes me think just because it was -- one's after the next, one day after the next, where it -- could be -- it was very consecutive. Do I know for sure? No, I don't know. I could only know if I answer the phone.

(Lasry Dep. 44:07 to 44:17, Def.'s Exhibit 22).

Moreover, during her deposition, Lasry testified that she knew she had no authority to change Rosenberg's client contact information that he had provided to Chase Bank:

> Q. Great. Ms. Lasry, when you placed the call to Chase on August 17, 2016 to ask them to stop calling your two cell numbers with an autodialed or to text you on those numbers, at the time you were not an authorized user on Yehuda Rosenberg's Chase accounts: correct?
>
> A. Correct.
>
> Q. At the time that you placed the calls to Chase on August 17, 2016, you had no legal right to make any changes on Yehuda Rosenberg's Chase accounts; correct?
>
> A. Correct.

(Lasry Dep. 55:11 – 55:22, Def.'s Exhibit 22.)

In addition, Chase Bank, through its investigation of the Lasry Complaint, alleged other "suspicious" acts of Lasry, Rosenberg, the Rephen law firm, and Kimi Sion LLP[4]. Chase argues that these additional facts demonstrate a pattern of activity that requires the imposition of sanctions. The suspicious transactions, according to Simon, were the following:

* On August 3, 2016, Rosenberg paid $1,500 from his Chase Freedom Card to Kimi Sion. (T. 24, 10-21) (Exhibit 5).

* On October 30, 2017, M. Harvey Rephen & Associates made a payment to Sion Abadi, LLC in the amount of $2,418.00 (T. 27, 8-14) (Exhibit 11). The subject matter was M. Lasry v. Amex (T. 28, 1).

* A February 5, 2018 check from M. Harvey Rephen & Assc. to Sion Abadi, LLC in the amount of $500.00. The subject matter was "Y. Rosenberg v. GC Services". (T. 28, 13 through T. 29, 12) (Exhibit 12).

* Another check dated February 5, 2018 from Harvey Rephen to Yehuda Rosenberg in the amount of $500.00. (T. 29, 18 through T. 30, 22) (Exhibit 13); and

* A check dated February 26, 2018 from M. Harvey Rephen & Associates' account to Sion Abadi in the amount of $12,799.18. The subject matter was Lasry v. Kohls. (T. 31, 10 through T. 33) (Exhibit 14).

---

[4] Kimi Sion LLP/Sion Abadi LLC is a credit repair company based in Lakewood, New Jersey.

Furthermore, Chase Bank presented other evidence to show that the Rephen Firm had failed to comply with other Court Orders, and argued that this Court should consider such lack of compliance in this matter. Specifically, on July 15, 2019, in a case captioned *Chase Bank, USA v. M. Harvey Rephen & Associates*, Untied States District Court, Southern District of New York, 1:19-mc-275 (GHW), the Honorable Gregory H. Woods ordered the Rephen Firm to produce documents and a corporate representative for a deposition. (Def.'s Notice of Supplemental Authority, Ex. B, S.D.N.Y. Order, July 14, 2019, ECF 23-2). The Rephen Firm did not comply, and on August 16, 2019, Judge Woods imposed a fine of $100.00 per day for each day of non-compliance. (Def.'s Exhibit 28). The underlying facts of the case before Judge Woods were not placed into evidence.

IV.

Generally, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper . . ." *See Carroll v. E One Inc.*, 893 F.3d 139, 145 (3d Cir. 2018) (citing Fed. R. Civ. P. 41(a)(2)). Here, Plaintiff and Defendant agreed to the dismissal, so the Court dismissed same.

The first issue is whether the Court has the authority to impose sanctions against the Rephen Firm and/or Geller. It is unclear whether, as in this case, a district court may assert authority over an attorney who has not entered an appearance in a case and who has not signed any of the pleadings or motion papers. The Court also does not know whether the Rephen Firm ever agreed to the "of counsel" status of Geller.

Attorneys' fees may be assessed against a party's counsel who willfully abuse judicial processes as well as against a party who has litigated in bad faith. *Carroll*, 2017 U.S. Dist. LEXIS 63721, at *6; *see Roadway Express v. Piper*, 447 U.S. at 766. Moreover, Federal Rule of Civil

Procedure 11 imposes a duty upon an attorney who signs "pleading[s], written motion[s], and other paper[s]" that he has made an "inquiry reasonable under the circumstances" as to the facts and law concerning the document. Fed. R. Civ. P. 11(b); *see* Bartkus, et. al., *New Jersey Federal Civil Procedure* § 17-2:3.2 (2020 ed.). Here, Geller is the signator on the Complaint as well as other court filings, but Rephen has not signed any of Lasry's papers. As such, Rule 11 hones in on the attorney who signed the pleadings as the responsible party, namely Geller.

Also, although Geller signed Plaintiff's pleadings and motion papers as "Edward B. Geller, P.C., Of Counsel to M. Harvey Rephen & Associates, P.C., 15 Landing Way, Bronx, New York," (*see* ECF Nos. 1, 36), Mr. Geller's Bronx address is different from the Rephen Firm's address; and the "of counsel" designation suggests that a relationship between the persons was "close and ongoing[5]." Geller's "of counsel" relationship may be of some relevance, but it is more prudent to follow Rule 11, as written, and to proceed against Geller. This is especially true here where the nature of the "of counsel" relationship of the Rephen Firm and Geller had not been factually developed at the Sanctions Hearing.

V.

Now, Chase Bank seeks sanctions in the form of payment of attorneys' fees and costs[6].

The purpose of Rule 11 is to hold attorneys and clients accountable for actions made during the course of litigation. *Mary Ann Pensiero, Inc. v. Lingle*, 847 F.2d 90, 94 (3d Cir. 1988); *D&D*

---

[5] *See Opinion 21*, 147 N.J.L.J. 979 (Feb. 24, 1997); *Serrins & Assocs., LLC v. Hanover Direct, Inc.*, DOCKET NO. A-5629-11T4, 2014 N.J. Super. Unpub. LEXIS 2012, at *18 (N.J. Super. Ct. App. Div. Aug. 13, 2014); *see generally* Formal Opinion 90-357, American Bar Association, Standing Committee on Ethics and Professional Responsibility, May 10, 1990.

[6] The Court notes that Chase Bank seeks sanctions against Geller and the Rephen Firm under 28 U.S.C. § 1927 or the Court's inherent authority. Yet, as indicated above, it is more prudent to proceed under Federal Rule of Civil Procedure 11.

*Assocs. v. Bd. of Educ. of N. Plainfield*, CIVIL ACTION NO. 03-1026 (MLC), 2015 U.S. Dist. LEXIS 165583, at *84 (D.N.J. Dec. 10, 2015). Specifically, the Rule seeks to discourage litigants from pursuing claims that are frivolous, legally unreasonable, or without factual foundation. *See Lieb v. Topstone Indus.*, 788 F.2d 151, 157 (3d Cir. 1986). Indeed, the Third Circuit has stated that Rule 11 requires an attorney to "Stop, Think, Investigate and Research" before filing papers either to initiate a suit or to conduct the litigation. *Gaiardo v. Ethyl Corp.*, 835 F.2d 479, 482 (3d Cir. 1987); *see ABD Monroe, Inc. v. Monroe Twp.*, Civil Action No. 04-1412 (WHW), 2008 U.S. Dist. LEXIS 242, at *45 (D.N.J. Jan. 3, 2008). Under Rule 11,

> [a] sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(4).

Moreover, in 2018, the Third Circuit in *Carroll v. E One Inc.*, opined about when it is appropriate for courts to award attorneys' fees, specifically when an action is voluntarily dismissed with prejudice based upon "exceptional circumstances." 893 F.3d at 141. "Exceptional circumstances include a litigant's attorney's failure to perform a meaningful pre-suit investigation" into the merits of her claim as well as an abuse of the judicial process or bad faith conduct. *Id.* A litigant's lawyer's failure to perform a meaningful pre-suit investigation is a "high bar" for litigants to satisfy, and a Court retains discretion to make this determination. *Id.* at 149.

A sanction must be compensatory rather than punitive in nature and may go no further than to redress the wronged party "for losses sustained." *Goodyear Tire & Rubber Co. v. Haeger*, 137 S. Ct. 1178, 1186 (2017). "A fee award is so calibrated if it covers the legal bills that the litigation

12

abuse occasioned." *Id.* Because of the court's "superior understanding of the litigation," it is accorded considerable discretion in making such fee determinations. *Id.*

The Court declines, in exercising its discretion, to impose sanctions against Geller for several reasons:

(1) Chase Bank proffers that the fines imposed in the Judge Woods lawsuit (*supra*, at p. 10) against the Rephen Firm is evidence of similar misconduct by Geller. Chase Bank provided no evidence to link up the Judge Woods lawsuit against Geller. As such, that evidence is given no weight;

(2) Chase Bank proffers that Geller's failure to have Kimi Sion/Sion Abadi appear for a deposition warrants imposition of sanctions. This proposition was not adequately explained. As I understand it, Chase's counsel sought the deposition of Kimi Sion LLP, which appears to be a credit repair company. Kimi Sion did not appear for the deposition. Kimi Sion LLP is an entity Chase's counsel "believed to be Sion Abadi." (Def.'s Exhibit 27, Dep. of Sion Abadi, May 14, 2019); (T. 4, 12-13). Chase's counsel allegedly links Kimi Sion LLP and Sion Abadi to this litigation through some evidence from other cases. More specifically, Simon testified to the "suspicious" transactions (*supra*, at p. 9) that he uncovered. I give little or no weight to this evidence for several reasons.

There is a lack of credible evidence that Sion Abadi and/or Kimi Sion were substantially involved in this case. Chase Bank's counsel alleges that Sion Abadi and Kimi Sion LLP are somehow related; but there was no credible proof presented at the Sanctions Hearing. As noted, Mr. Simon listed the four transactions; but he did not relate these four items to this lawsuit or explain some pattern of activity of Lasry that Geller should have known prior to filing suit. (T. 26-32).

Moreover, Kimi Sion and/or Simon Abadi are not parties to this litigation, and it has not been shown what duty Geller had to produce the appropriate witness for deposition. Therefore, this evidence was given no weight;

(3) Chase Bank appears to allege that Lasry and Rosenberg devised this lawsuit when they were married, and their concerted actions should be considered. (Def.'s Response to Pl.'s Post-Trial Br. 4, 12). "Specifically," Chase alleges, it has "presented evidence of a scheme perpetuated by Plaintiff and her counsel involving a calculated series of events wherein Plaintiff's husband, Yehuda Rosenberg, provided consent for Chase to contact him regarding his Chase credit card accounts at two Verizon cell phone numbers, both of which were in Plaintiff's name on a family plan." (*Id.* at 3). Chase Bank also indicates that Rosenberg and Lasry consented to having Chase call them, because such consent was implied in his credit card customer agreements. (*See* Def.'s Exhibit 3, p. 11).

It is difficult to accept the concerted activity of Lasry and Rosenberg as credible evidence when their deposition testimony is different. For example, Lasry claims that Rosenberg "drove her crazy" (Lasry Dep., T. 4 -1 9), and Rosenberg does not recall any such concerted action with Lasry. He stated:

> So, I mean, at the time that — when I got married to her, I was already defaulting on most of the things, so I wouldn't think that I put her -- on it. I wouldn't do that to her and make — you know, put her credit — bad her credit or anything. I don't know.

(Rosenberg Dep., T. 2, ¶ 8).

There is little credible evidence to show any concerted activity by Lasry and Rosenberg which would give rise to a willful failure to investigate the matter at the outset for this ligation by Geller; and

14

(4) The amount of the requested fee is unreasonable. Ms. Sarchio testified about extraordinary delays in discovery, and numerous requests to adjourn depositions. (T. 79, 24 – 80, 14; 96, 16-24). Based on the Court's practice, this fee ($462,330.00) is far above what other firms would have charged. This is a relatively simple TCPA case. It should have involved drafting an answer and some discovery. In my judgment, to impose sanctions in such an amount is punitive and far beyond the scope of the service. *See Goodyear Tire*, 137 S. Ct. 1178 at 1186. Accordingly, the Court declines to award attorneys' fees and costs.

## ORDER

This matter having come before the Court on Defendant's Motion for Attorneys' Fees and Sanctions, and the Court having carefully reviewed and taken into consideration the submissions of the parties, as well as the arguments and exhibits therein presented, and for good cause shown, and for all of the foregoing reasons,

IT IS on this 3rd day of April, 2020.

**ORDERED** that Defendant's request for Attorneys' Fees and Costs (ECF No. 21) is **DENIED**. The Clerk is directed to close the file.

s/*Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.